10 CV 2639

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FUCHSBERG INVESTMENT PARTNERS, On Behalf Of Itself And All Others Similarly Situated, )))) | Civil Action No. |
| Plaintiff,- )) | CLASS ACTION COMPLAINT |
| v. )) | |
| FUQI INTERNATIONAL, INC., YU KWAI CHONG, and CHING WAN WONG, )))) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

RECEIVED MAR 24 2010 U.S.D.C. S.D. N.Y. CASHIERS

Plaintiff Fuchsberg Investment Partners ("Plaintiff"), individually and on behalf of all

other persons similarly situated, by its undersigned attorneys, for its Class Action Complaint

against defendants, alleges upon personal knowledge as to itself and its own acts, and upon

information and belief as to all other matters, based on, *inter alia*, the investigation conducted by

and through its attorneys, which included, among other things, a review of the defendants' public

documents, conference calls and announcements made by defendants, Securities and Exchange

Commission ("SEC") filings, wire and press releases published by and regarding Fuqi

International, Inc. ("Fuqi" or the "Company"), securities analysts' reports and advisories about

the Company, and information readily obtainable on the Internet.

## NATURE OF THE ACTION

1.     This is a securities fraud class action on behalf of all persons who purchased or

acquired Fuqi securities during the period from May 15, 2009 through and including March 16,

2010 (the "Class Period"). This class action is brought under Sections 10(b) and 20(a) of the

Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a); and SEC

Rule 10b-5, 17 C.F.R. § 240.10b-5.

2.      Fuqi is a leading designer of high quality precious metal jewelry in China, developing, promoting, and selling a broad range of products in the large and rapidly expanding Chinese luxury goods market. The Company is incorporated in Delaware. Its shares are traded on the NASDAQ and the Company files financial reports with the SEC.

3.      Throughout the Class Period, defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company's financial results were artificially inflated due to Fuqi's material misstatements involving the accounting of the Company's inventory and cost of sales where it understated the cost of sales and overstated gross profit and net income; (2) that the Company's internal and disclosure controls with respect to its inventory and cost of sales were materially deficient; (3) as a result of the foregoing, Fuqi's financial statements were not fairly presented in conformity with United States Generally Accepted Accounting Principles ("GAAP") and were materially false and misleading; and (4) based on the foregoing, Defendants lacked a basis for their positive statements about the Company, its prospects and growth.

4.      On March 16, 2010, after the market closed, the Company disclosed that Fuqi had identified certain errors related to the accounting of the Company's inventory and cost of sales and that the result of the accounting errors was expected to have a material impact on the Company's previously issued quarterly financial statements for the first three quarters of 2009. The Company informed investors that, as a result, Fuqi's financial statements for the first three quarters of 2009 should no longer be relied upon and that the Company intended to file amendments disclosing the effect of the accounting errors.

5.     The disclosures on March 16, 2010 caused Fuqi's securities to decline by $7.10 per share or more than 37%, to close on March 17, 2010 at $11.90 per share, on unusually heavy volume.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  Fuqi is listed on the NASDAQ.

10.     In connection with the challenged conduct, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

**Plaintiff**

11.     Plaintiff as set forth in its certification attached hereto purchased Fuqi securities during the Class Period and was damaged when the disclosures of the Company's accounting improprieties caused the price of Fuqi shares to decline.

**Defendants**

12.     Defendant Fuqi operates through its wholly-owned subsidiary, Fuqi International Holdings Co., Ltd., a British Virgin Islands corporation, and its wholly owned subsidiary, Shenzen Fuqi Jewelry Co., Ltd., a company established under the laws of The People's Republic of China.  In November 2006, Fuqi consummated a reverse merger transaction and subsequently reincorporated in Delaware on December 8, 2006.  Fuqi maintains its principal executive offices at 5/F., Block 1, Shi Hua Industrial Zone, Cui Zhu Road North, Shenzhen 518019, People's Republic of China.   The aggregate number of shares of Fuqi securities outstanding as of September 2009 is approximately 27.6 million shares.  Fuqi is actively traded on the NASDAQ under the ticker symbol "FUQI."

13.     Defendant Yu Kwai Chong ("Chong") was the principal founder of the Company and has been the Company's President, Chief Executive Officer and Chairman of the Board of Directors since April 2001.  Defendant Chong signed the Company's quarterly and annual reports filed with the SEC.

14.     Defendant Ching Wan Wong ("Wong") has been the Company's Chief Financial Officer since June 2004 and is a member of the Company's Board of Directors.

15.     The defendants referenced above in ¶¶ 13-14 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background**

16.     Fuqi is a designer, producer and seller of precious metal jewelry in China.  The Company produces products made from gold, platinum and Karat gold (K-gold) and items that contain diamonds and other precious stones on a customer-order basis.  Fuqi sells its products

directly to distributors, retailers and wholesalers, who then sell its product to the ultimate consumer. As of March 31, 2009, the Company's wholesale distribution network included approximately 31 provincial distributors and more than 840 direct-sales distributors.

**Defendants' False and Misleading Statements**

17.    On May 15, 2009, the Company issued a press release announcing its financial results for the first quarter of ended March 31, 2009. The Company reported total revenue of $109.4 million compared to $77.6 million in the first quarter of 2008. The Company also reported net income of $9.7 million, or $0.45 per diluted share for the

18.    For 2009, the Company projected full-year revenue of approximately $442 - $465 million and net income of $32 - $35 million, or diluted EPS of $1.49 - $1.63.

19.    Defendant Chong commented that on the results, stating, in relevant part:

> We are excited to continue posting strong financial results in the first quarter of 2009, and are pleased to be one of the leaders in the growing luxury jewelry market in China, which has been somewhat resistant to the effects of the economic downturn. Despite the health of the global economy, we have put in place a structure that has allowed us to continue growing at respectable rates.... We will continue to serve our wholesale customers optimally, by maintaining the right amount of inventory and varieties of design on hand at all time to fulfill our customer demand.
>
> ***
>
> Our keen financial management has allowed us to post this impressive growth, and enabled us to begin to distinguish ourselves from the competition. We plan to continue to conservatively manage our balance sheet so that we are always ready to capitalize upon profitable opportunities in the marketplace.

20.    On the same day, the Company filed its quarterly report for the first quarter ended March 31, 2009 with the SEC, which was signed by defendants Chong and Wong. The Form 10-Q reiterated the previously announced financial statements, and represented that they were presented in conformity with U.S. GAAP. In addition, pursuant to the Sarbanes-Oxley Act

of 2002 ("SOX"), the Form 10-Q contained signed certifications by defendants Chong and Wong, stating that the Form 10-Q did not contain any material misrepresentations.

21.    On July 31, 2009, the Company conducted a public offering for its common stock of more than 5,500,000 shares at $21.50 per share, for net proceeds to the Company of approximately $112 million.

22.    On August 6, 2009, the Company issued a press release announcing its financial results for the second quarter of ended June 30, 2009.  The Company reported total revenue of $100.8 million compared to $66.9 million in the second quarter of 2008.  The Company further reported net income of $9.9 million, or $0.45 per diluted share for the quarter, compared to $5.3 million, or $0.25 per diluted share in the same period of the prior year.

23.    For 2009, the Company guided upward its previous outlook to full year revenue of approximately $509.2 - $527 million and net income of $44 to $46.8 million, or diluted EPS of $1.83 - $1.94.

24.    Defendant Chong commented on the results, stating, in relevant part:

> I am pleased to report that, our team has once again delivered strong second quarter results. We believe this is an indication that our wholesale and retail strategy, combined with our vertically integrated operations and growing brand recognition, provides us with a blueprint for success and reflects the strength of our position in the growing Chinese jewelry marketplace.

***

> We believe that we have laid the foundation to successfully build a fully-integrated wholesale and retail operation that can capture a sizable market share in the growing Chinese middle class market.  We are enthusiastic about our future growth prospects, and believe we have the vision to build the leading jewelry provider in China.

25.    On the same day, the Company filed its quarterly report for the second quarter ended June 30, 2009 with the SEC on a Form 10-Q which was signed by defendants Chong and

Wong. The Form 10-Q reiterated the previously announced financial statements and represented that they were presented in conformity with U.S. GAAP. In addition, pursuant to the SOX, the Form 10-Q contained signed certifications by defendants Chong and Wong, stating that the Form 10-Q did not contain any material misrepresentations.

26.    In response to Defendants' positive statements, Fuqi securities rose more than 12%, to close at $27.39 per share.

27.    The statements referenced above in ¶¶ 17-20; 22-25 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

(a)    that the Company's financial results were artificially inflated due to Fuqi's material misstatements involving the accounting of the Company's inventory and cost of sales whereby it understated the cost of sales and overstated gross profit and net income;

(b)    that the Company's internal and disclosure controls with respect to its inventory and cost of sales were materially deficient;

(c)    as a result of the foregoing, Fuqi's financial statements were not fairly presented in conformity with U.S. GAAP and were materially false and misleading; and

(d)    based on the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its prospects and growth.

**The Truth Begins to Emerge**

**The Initial Partial Disclosure**

28.    On November 9, 2009, the Company issued a press release announcing its financial results for the third quarter of ended September 30, 2009. The Company reported total

revenue of $127.2 million compared to $93.7 million in the third quarter of 2008. The Company further reported net income of $18.8 million, or $0.73 per diluted share for the quarter, compared to $6.5 million, or $0.31 per diluted share in the same period of the prior year.

29.     For the fourth quarter, the Company revised upward its guidance and projected total revenue between approximately $182 - $191 million and net income in the range of $15.2 - $16.6 million, or $0.55 - $0.60 per diluted share. For 2009, the Company again guided upward its previous outlook to full year revenue of approximately $519.4 - $528.4 million and net income of $53.5 to $54.9 million, or diluted EPS of $2.21 - $2.27.

30.     Defendant Chong commented the following:

> The third quarter came in stronger than we expected, considering the long National Holiday week and the dearth of gift-giving holidays during the quarter. Nevertheless, our ability to generate strong revenue and earnings growth during a seasonally slow period is extremely encouraging for our management team, as we look towards our goals for the future. As a result of the stronger-than-expected third quarter performance, we will be raising our revenue and net income guidance for the fourth quarter and full year.

31.     On the same day, the Company filed its quarterly report for the third quarter ended September 30, 2009 with the SEC on a Form 10-Q which was signed by defendants Chong and Wong. The Form 10-Q reiterated the previously announced financial statements and represented that they were presented in conformity with U.S. GAAP. In addition, pursuant to SOX, the Form 10-Q contained signed certifications by defendants Chong and Wong, stating that the Form 10-Q did not contain any material misrepresentations.

32.     While the Company's financial results for the first three quarters of the 2009 appeared to meet expectations, analysts voiced skepticism regarding the results and projections given the significant contribution in original design manufacturing (ODM) orders and the slowdown in wholesales revenues. On November 9, 2009, an analyst report issued by Merriman

Curhan Ford entitled, "Fuqi International Reports Mixed 3Q09 Results; Slower Core Growth

Boosted by Significant ODM Revenues; Need to See 4Q/FFY10 Rebound in Trends."

> [W]e are slightly more cautious on the near-term wholesale growth profile given the ODM margin boost in 3Q and need to see a return to core growth in 4Q to remain constructive on the shares — along with a return to more normalized retail gross margins. FY10 revenue growth should remain in tact although EPS growth will be constrained due to the one-time benefits this year. We believe a P/E multiple of 12-15x on our FY10 EPS estimate is reasonable, which yields a potential valuation range of $27.75-34.50.

> **Summary**
>
> - **FUQI reported mixed 3Q results** with overall revenues of $127.2M vs. our estimate of $129.5M and EPS of $0.73 vs. our street-high estimate of $0.51. Overall blended gross margins of 23.5% came in above our 16.0% estimate.
> - **ODM orders provided the quarterly boost.** FUQI generated $19.0M in wholesale revenues from original design manufacturing (ODM) orders vs. only $1.0M in 3Q09. Excluding these orders, wholesale growth slowed to around 10%. In addition, management noted that the gross margin on the ODM revenues are at least 2x the margins on traditional wholesale revenues (although by our calculations the benefit had to be much greater than that).
> - **Concerned about lower quality revenues.** We view these ODM orders as lower quality than core jewelry sales and needs to monitor the trend to make sure this does not continue. At a minimum, FUQI management made good use of extra capacity to land high-margin business, but this is not the core jewelry business for which investors are involved in FUQI shares.
> - **Retail margins below expectations.** Retail margins of 22.6% came in below our 31.5% estimate and the 38.0% margin last year. Management attributed this to product mix with more lower-margin platinum products (investing) instead of gold/gemstone products (gift-giving). We expect margins to rebound in 4Q with more gift-giving holidays vs. none in 3Q.

33.    On this news, Fuqi shares declined $4.15 per share, or nearly 18%, to close at

$19.18 per share on November 9, 1009, on unusually heavy volume of more than 10.6 million

shares traded.

34.    Though they partially corrected defendants' prior misrepresentations, the statements referenced above in ¶¶ 28-31 above were materially false and/or misleading because they misrepresented and failed to disclose the adverse facts set forth in ¶ 27 (a)-(d), which were known to Defendants or recklessly disregarded by them.

**The Full Corrective Disclosure**

35.    On March 16, 2010, Fuqi shocked the market, disclosing for the first time that it was delaying the release of its fourth quarter and year ended 2009 financial results. Specifically, the Company disclosed in relevant part the following:

> The Company has been conducting an assessment of its internal controls as of December 31, 2009 in accordance with the Company's Sarbanes-Oxley Act compliance procedures. Although the Company's assessment procedures are not yet complete, the Company believes that at least one of the identified deficiencies related to its 2009 Sarbanes-Oxley Section 404 compliance audit, thus far, constitutes a material weakness, including but not limited to the Company's period-end closing process as of December 31, 2009.

> As a result of the findings of the 2009 Sarbanes-Oxley Section 404 audit, thus far, the Company identified certain accounting errors that are expected to have a material impact on the previously issued quarterly financial statements for the first three quarters of 2009…. [I]t is expected that as a result of the accounting errors, the cost of sales for each of the periods were understated and gross profit and net income, as a result, were accordingly overstated. Based on the Company's latest estimate, the earnings per share included in the previously issued financial statements for the nine months ended September 30, 2009 were overstated by approximately $0.15-$0.19 per share based on approximately 23.0 million weighted average number of shares for the nine months ended September 30, 2009.

36.    Also on March 16, 2010, Fuqi filed a Form 8-K with the SEC where it disclosed that its previously issued financial statements for the first three quarters of 2009 "should not be relied upon due to an error in the accounting of inventory and cost of sales" and provided more detail regarding the amount of the overstatement for the first and second quarters of 2009:

Based on the Company's latest estimate, the possible overstatement is currently anticipated to be approximately 12%-14% and 21%-23% for the first quarter and the second quarter of 2009, respectively....

37.     As a result of the disclosures, Fuqi's securities dropped 37% or $7.10 to close at $11.90 on March 17, 2010, on volume of more than 17.3 million.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Fuqi securities during the Class Period (the "Class"); and were damaged thereby.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Fuqi securities were actively traded on the Nasdaq. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Fuqi or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Fuqi;

- whether the Individual Defendants caused Fuqi to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Fuqi securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Fuqi securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the Nasdaq, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Fuqi securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## SCIENTER ALLEGATIONS

46.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Fuqi, their control over, and/or receipt and/or modification of Fuqi's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Fuqi, participated in the fraudulent scheme alleged herein.

## CLAIMS FOR RELIEF

### COUNT I

**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.    During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fuqi securities; and (iii) cause Plaintiff and other members of the Class to purchase Fuqi securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were

designed to influence the market for Fuqi securities and options. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Fuqi's finances and business prospects.

51.    By virtue of their positions at Fuqi, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Fuqi securities from their personal portfolios.

53.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Fuqi, the Individual Defendants had knowledge of the details of Fuqi internal affairs.

54.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Fuqi. As officers and/or directors of a publicly-held company, the Individual Defendants had a

duty to disseminate timely, accurate, and truthful information with respect to Fuqi's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Fuqi securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Fuqi's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Fuqi securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants and were damaged thereby.

55.     During the Class Period, Fuqi securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Fuqi securities and options at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares and options, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of Fuqi securities and options were substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Fuqi securities and options declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the
Exchange Act Against The Individual Defendants)**

58.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.    (a)    During the Class Period, the Individual Defendants participated in the operation and management of Fuqi, and conducted and participated, directly and indirectly, in the conduct of Fuqi's business affairs.  Because of their senior positions, they knew the adverse non-public information about Fuqi's misstatement of income and expenses and false financial statements.

(b)    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Fuqi's financial condition and results of operations, and to correct promptly any public statements issued by Fuqi which had become materially false or misleading.

(c)    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Fuqi disseminated in the marketplace during the Class Period concerning Fuqi's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Fuqi to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Fuqi within the

meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Fuqi securities and options.

60.     Each of the Individual Defendants, therefore, acted as a controlling person of Fuqi. By reason of their senior management positions and/or being directors of Fuqi, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Fuqi to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Fuqi and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Fuqi.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

18

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury of all issues that may be so tried.

Dated:  March 23, 2010

POMERANTZ HAUDEK GROSSMAN
& GROSS LLP

By: _____

Marc I. Gross
Fei-Lu Qian
100 Park Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ HAUDEK GROSSMAN
& GROSS LLP**
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Phone: 312-377-1181
Fax: 312-377-1184

**KENNETH A. ELAN, ESQ.**
217 Broadway, Suite 606
New York, NY 10007
Phone: (212) 619-0261
Fax: (212) 385-2707

*Counsel for Plaintiff*

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

1.    I, Jonathan Minkoff on behalf of Fuchsberg Investment Partners ("Fuchsberg"), make this declaration pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed the draft Complaint against Fuqi International, Inc. ("Fuqi") and authorize a filing of a comparable Complaint on Fuchsberg's behalf.

3.    Fuchsberg did not purchase Fuqi securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Exchange Act of 1934.

4.    Fuchsberg is willing to serve as a representative party on behalf of a Class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary.  Fuchsberg understands that the Court has the authority to select the most adequate lead plaintiff in this action and that the firm of Pomerantz Haudek Grossman & Gross LLP may exercise its discretion in determining whether to move on Fuchsberg's behalf for appointment as lead plaintiff.

5.    To the best of my current knowledge, the attached sheet lists all of Fuchsberg's transactions in Fuqi securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, Fuchsberg has not sought to serve as a representative party on behalf of a class under the federal securities laws, except the following:

— NONE —

7.    Fuchsberg agrees not to accept any payment for serving as a representative party on

behalf of the class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed  **3-23-10**  , at   New York City, NY
  (Date)                             (City, State)

_____
(Signature)

JONATHAN MINKOFF
(Type or Print Name)

GEN PRTNER
(Title)

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|------|------------------|------------------|-----------------|
| 11/13/09 | Purchase | 795 | $19.8609 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |